**NO. 25-1443**

UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

---

**UNITED STATES,**
**Appellee**

**v.**

**MALIK  D. PARSONS,**
**Defendant-Appellant**

---

Appeal from Judgment
of the United States District Court
for the District of Massachusetts

---

**BRIEF AND ADDENDUM**
**OF DEFENDANT-APPELLANT MALIK D. PARSONS**

---

James L. Sultan
First Circuit No. 10653
jsultan@rankin-sultan.com
Rankin & Sultan
1666 Massachusetts Avenue, Suite P-16
Lexington, MA 02420
(617) 720-0011

February  2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  STATEMENT OF RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Pretrial Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.  Trial Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.  The  government's case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

            a.  Detective Anthony Lattanzio. . . . . . . . . . . . . . . . . . . . . . . 4

            b.  Other witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.  The defense case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.  Closing arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.   Sentencing Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.   Sentencing Guidelines calculation set forth in Presentence
            Investigation Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2.   Parson's objections to the PSR guidelines calculation. . . . . . 12

        3.   The government's sentencing memorandum. . . . . . . . . . . . . . 13

        4.   The defendant's sentencing memorandum. . . . . . . . . . . . . . . 14

        5.   Sentencing hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

I.   THE DISTRICT COURT'S  ADMISSION OF DETECTIVE
     LATTANZIO'S OPINION THAT PARSONS WAS USING
     APARTMENT A311 TO PACKAGE AND DISTRIBUTE ILLEGAL
     DRUGS WAS A PREJUDICIAL ABUSE OF DISCRETION . . . . . . . . . . 19

     A.   Summary of Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

          1.   Lay opinion evidence in general. . . . . . . . . . . . . . . . . . . . . 19

          2.   Impermissible lay opinion testimony suggesting guilt. . . . . 20

          3.   Standard of review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     B.   Application of Law to Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

          1.   Detective Lattanzio's testimony that Parsons was
               using Apartment A311 as a stash house to package and
               distribute illegal drugs was clearly inadmissible. . . . . . . . . 23

          2.   Relief is warranted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

II.  THE DISTRICT COURT CLEARLY ERRED IN IMPOSING
     A TWO-LEVEL UPWARD ADJUSTMENT PURSUANT TO
     U.S.S.G. §2D1.1(b)(1) FOR  POSSESSION OF A DANGEROUS
     WEAPON. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

     A.   Summary of Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

          1.   Adjustments to offense level under the Guidelines. . . . . . . . 24

          2.   Upward  adjustment for possession of a firearm in
               connection with a drug offense. . . . . . . . . . . . . . . . . . . . . . 25

3.     Standard of review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

B.     Application of Law to Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

1.     There was no actual or constructive possession of firearms
       by Parsons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

2.     Bean's possession of firearms in the apartment wasn't
       reasonably foreseeable to Parsons. . . . . . . . . . . . . . . . . . . . 29

3.     Application Note 11(a)  to §2D1.1 should no longer be
       deferred   to after *Kisor v. Wilkie*. . . . . . . . . . . . . . . . . . . . 31

4.     Parsons is entitled to resentencing. . . . . . . . . . . . . . . . . . . . 32

III.   EVEN IF IT WERE PERMISSIBLE TO IMPOSE A FIREARMS
       ENHANCEMENT ON PARSONS, THE DISTRICT COURT ERRED
       IN REFUSING TO GRANT HIM A TWO-LEVEL REDUCTION IN
       OFFENSE LEVEL PURSUANT TO U.S.S.G.  §4C1.1 SINCE HE
       HAD ZERO CRIMINAL HISTORY POINTS AND DID NOT
       PERSONALLY  POSSESS A FIREARM. . . . . . . . . . . . . . . . . . . . . . . . 33

A.     Summary of Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

B.     Application of Law to Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

ADDENDUM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

**TABLE OF AUTHORITIES**

| Cases | Page |
|---|---|

*Kisor v. Wilkie*, 588 U.S. 558 (2019). . . . . . . . . . . . . . . . . . . . . . . . . 31, 32, 35

*United States v. Agramonte-Quezada*, 30 F.4th 1 (1st Cir. 2022). . . . . . . . . . . . . 20

*United States v. Anderson*, 452 F.3d 87 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . 35

*United States v. Belanger*, 890 F.3d 13 (1st Cir. 2018). . . . . . . . . . . . . . . . . 19, 20

*United States v. Bianco*, 922 F. 2d 910 (1st Cir. 1991). . . . . . . . . . . . . . 26, 30, 31n

*United States v. Burgos-Figueroa*, 778 F. 3d 317 (1st Cir. 2015).. . . . . . . . . . . . 25

*United States v. Figueroa-Encarnacion*, 343 F.3d 23 (1st Cir. 2003). . . . . . . . . 34

*United States v,. Flores-De-Jesus*, 569 F.3d 8 (1st Cir. 2009). . . . . . . . . . . . . 22

*United States v. Garcia-Sierra*, 994 F.3d 17 (1st Cir. 2021). . . . . . . . . . . . . . . 20

*United States v. Gonzalez-Vazquez*, 34 F.3d 19 (1st Cir. 1994). . . . . . . . . . . . . . 27

*United States v. Guia-Sendeme*, 134 F4th 611 (1st Cir. 2025).. . . . . . . . . 25, 27, 32

*United States v. Hernandez,* 964 F.3d 95 (1st Cir. 2020). . . . . . . . . . . . . . 26, 27, 30

*United States v. Hilario-Hilario*, 529 F.3d 65 (1st Cir. 2008).. . . . . . . . . . . . . . 25

*United States v. Irizarry-Sisco*, 87 F.4th 38 (1st Cir. 2023). . . . . . . . . . . . . . . 22

*United States v. Lacouture,* 835 F.3d 187 (1st Cir. 2016). . . . . . . . . . . . . . . . . . 27

*United States v. Lewis*, 963 F.3d 16 (1st Cir. 2020). . . . . . . . . . . . . . . . . . . . . . 32

*United States v. McLean*, 409 F.3d 492 (1st Cir. 2005). . . . . . . . . . . . . . . . . . . . 34

*United States  v. Meises,*  645 F.3d 5 (1ˢᵗ Cir. 2011).. . . . . . . . . . . . . . 19, 20, 22, 24

*United States v. Mercer,*  834 F3d 39  (1ˢᵗ Cir. 2016). . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Miranda-Santiago,*  96 F.3d 517  (1ˢᵗ Cir. 1996). . . . . . . . . . . . . 33

*United States v. Nasir,*  982 F3d  144 (3ʳᵈ Cir. 2020) (*en banc*).. . . . . . . . . . . . . 32

*United States v, Ovalle-Marquez,* 36 F.3d 212 (1ˢᵗ Cir. 1994). . . . . . . . . . . . . . 27

*United States v. Perez-Vasquez,*  6 F.4th 180 (1ˢᵗ Cir. 2021). . . . . . . . . . . . . . . 20

*United States v. Phoeun-Lang,*  672 F.3d 17 (1ˢᵗ Cir. 2012).. . . . . . . . . . . . . . 22

*United States v. Pontz,*  132 F.4th 10  (1ˢᵗ Cir. 2025). . . . . . . . . . . . . . . . . . . . 21

*United States v. Riccardi,*  989 F.3d 476 (6ᵗʰ Cir. 2021).. . . . . . . . . . . . . . . . . 32

*United States v. Rodriguez,*  115 F.4th 24 (1ˢᵗ Cir. 2024).. . . . . . . . . . . . . . . . . 19

*United States v.  Rodriguez-Adorno,*  695 F.3d 32 (1ˢᵗ Cir. 2012). . . . . . . . . . . . . 20

*United States v. Sanabria,*  645 F.3d 505 (1ˢᵗ Cir. 2011). . . . . . . . . . . . . . . . 19, 22

*United States v. Sepulveda,*  15 F.3d 1161   (1ˢᵗ Cir. 1993). . . . . . . . . . . . . . . . . 22

*United States v. Sklar,*  920 F. 2d 107  (1ˢᵗ Cir. 1990).  . . . . . . . . . . . . . . . . . . 25

*United States v. Spencer,*  873 F.3d 1 (1ˢᵗ Cir. 2017). . . . . . . . . . . . . . . . . . . . 19

*United States v. Thangsophaporn,* 503 F3d 51  (1ˢᵗ Cir. 2007). . . . . . . . . . . . . . 26

*United States v. Vazquez-Rivera,* 665 F.3d 351 (1ˢᵗ Cir. 2011). . . . . . 19, 20, 21, 24

*United States  v. Waller,*  89 F.4th 173  (1ˢᵗ Cir. 2023).. . . . . . . . . . . . . . . . . . 27

*United States v. Woodward,*  277 F. 3d 87  (1ˢᵗ Cir. 2002). . . . . . . . . . . . . . . . . 25

**Statutes, Rules, and Sentencing Guidelines Provisions**      **Page**

18 U.S.C. §3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

U.S.S.G. §1B1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

U.S.S.G. §2D1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S.S.G. §4C1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S.S.G. §5C1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

**JURISDICTIONAL STATEMENT**

Defendant-appellant Malik D. Parsons appeals from a final judgment of the United States District Court for the District of Massachusetts in a criminal case. The district court (Gorton, J.), which had jurisdiction under 18 U.S.C. §3231, entered judgment on May 5, 2025. Add. 40, [1/] and the defendant filed a timely notice of appeal that same date. A. 385. This Court has jurisdiction under 28 U.S.C. §1291.

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

1. Did the district court abuse its discretion in permitting the lead investigator to testify that he believed the defendant was using an apartment as a stash house to package and distribute illegal narcotics and, if so, was the admission of that improper testimony prejudicial?

2. Did the district court clearly err in applying a two-level upward adjustment to the defendant's offense level under U.S.S.G. §2D1.1(b)(1) where there was insufficient evidence that the defendant possessed firearms or that his co-defendant's possession of firearms was reasonably foreseeable to him?

---

[1/] References to materials set forth in the Addendum are abbreviated herein as "Add. [page];" references to materials in the Sealed Addendum as "S. Add. [page];" references to materials in the Record-Appendix as "A. [page];" references to the trial transcript as "Tr. [volume/page];" and references to hearing transcripts as "Tr. [date/page]."

1

3.  Even if the imposition of an upward adjustment under §2D1.1(b)(1) were permissible, did the district court err in failing to grant the defendant a two-level downward adjustment under U.S.S.G. §4C1.1 where there was insufficient evidence that the defendant personally possessed firearms (or induced his co-defendant to do so) and where the district court improperly conflated the legal criteria for §2D1.1(b)(1) and §4C1.1(a)(7)?

### STATEMENT OF THE CASE

### I.  PROCEDURAL HISTORY.

Defendant Malik D. Parsons ["Parsons"] was indicted along with co-defendant Malik D. Bean-Bousseau ["Bean"] on November 30, 2021 by a federal grand jury in the District of Massachusetts.  Both defendants were charged with conspiracy to distribute and to possess with intent to distribute 40 grams or more of fentanyl and 500 grams or more of cocaine (Count One), possession with intent to distribute said drugs (Count Two), possession of a firearm in furtherance of a drug trafficking offense (Count Three), and possession of a firearm with an obliterated serial number. (Count Four)  A. 32.  After unsuccessfully litigating a motion to suppress evidence, co-defendant Bean-Bousseau pled guilty to Counts One, Two, and Four and received concurrent sentences of 70 months imprisonment on Counts One and Two and 60

2

months imprisonment on Count Four, to be followed by a four-year term of supervised release. A. 1. [2/]

Parsons proceeded to trial before District Judge Nathaniel M. Gorton and a jury. Just before trial, the court allowed the government's motion to dismiss the firearm counts (Three and Four), so only the drug counts (One and Two) remained. A. 26. On January 24, 2025, the jury found Parsons guilty on both counts. Following a sentencing hearing, he was sentenced to serve concurrent sentences of 84 months imprisonment on each count, to be followed by a four-year term of supervised release. Judgment entered on May 5, 2025, Add. 40. Parsons filed a timely notice of appeal the same day. A. 385.

## II. STATEMENT OF RELEVANT FACTS. [3/]

### A. Pretrial Proceedings.

Prior to trial, the government filed a motion in limine to admit lay opinion testimony from law enforcement witnesses respecting "common practices of drug

---

[2/] Count 3 was dismissed on the government's motion. The sentences of imprisonment imposed on Bean-Bousseau were subsequently commuted by an executive grant of clemency on January 17, 2025. Docket #204; A. 28. He served a total of forty-five and one-half months in custody. A. 338 .

[3/] The facts set forth in this section are those relevant to the issues presented for review. They do not purport to detail all pretrial, trial, and post-trial proceedings.

3

traffickers." Doc. 167; Add. 49. The defendant filed a response, asserting, *inter alia*, that such  testimony "should not transcend into ultimate conclusions...." Doc. 176; Add. 53. During the final pretrial conference, the district court allowed the government's motion.  A. 26.

## B.  Trial  Proceedings.

### 1.      The government's case.

The government presented its case at this short trial through four law enforcement witnesses and 26 exhibits, including video excerpts from court-authorized electronic surveillance, still photographs, and drugs seized from an apartment ["Apartment A311"] located in a multi-unit apartment complex, "One Mansfield Avenue Apartments," in Mansfield,  Massachusetts, during the execution of a search warrant at that address on August 2, 2021 and from co-defendant Bean, who was arrested while leaving that apartment on the date of the search.  Much of the video evidence came from a hidden camera located in a common hallway near the entrance to the apartment. A second camera was installed outside the building.

### a.      Detective Anthony Lattanzio.

The government's lead witness was Mansfield Police Detective Anthony Lattanzio, an experienced narcotics investigator. He testified about drug investigations in general  and this one in particular. He started conducting

surveillance of Apartment A311 in March of 2021. According to the apartment's lease, the tenant was Chante [or Shauntae] Wilson. He never saw her there. He did observe both Parsons and Bean going in and out of that apartment almost every day over the next five months. They both had keys. Parsons stayed overnight in the apartment about once a week. Tr. 1/134-149; A. 53-68. Bean sometimes spent the night there as well. Tr. 2/77; A. 170.

Detective Lattanzio described two occasions in early June 2021 when Parsons was observed on surveillance video leaving the apartment with clear plastic bags that appeared to contain a white substance. Those videos were introduced into evidence. Tr. 1/151-160; A. 70-79. Lattanzio described a mobile phone box he retrieved from an outdoor trash container on June 17th after seeing Parsons throw something away there the preceding day. *Id.* at 162; A. 81. A receipt for the purchase of such a phone was also retrieved from the trash, and video surveillance footage from a Target store appearing to show Parsons and Bean purchasing such a phone was introduced into evidence. Tr.2/6-10; A. 99-103.

Detective Lattanzio described physical surveillance of Parsons and Bean as they traveled together in Parsons' Jeep Cherokee on June 21st and 23rd. According to Lattanzio, "they drove around, [and] conducted numerous hand-to-hand transactions that were observed by investigators." Tr. 2/17-39; A. 110-132. On July

7th, Lattanzio saw Parsons throw a plastic bag away in the trash outside the apartment building. Lattanzio retrieved that bag, which contained clear plastic baggies with what appeared to be drug residue inside. *Id.* at 43-46; A. 136-139.

Lattanzio testified about the execution of a search warrant for Apartment A311 on August 2, 2021. Bean, who was intercepted leaving the apartment as the agents arrived, was arrested and searched. He had drugs and cash in his possession. Tr. 2/59-66; A. 152-159. During the search of the apartment, equipment commonly used in the processing of drugs was found in the dishwasher. *Id.* at 61-62; A. 154-155. A bag containing what appeared to be drugs was found hanging on a closet door. *Id.* at 63-64; A. 156-157. Another bag containing what appeared to be drugs was found under the kitchen sink. *Id.* at 66; A. 159.[4]

Parsons was not present at the apartment on the day the search warrant was executed. The only time he had stayed over at the apartment between July 19th and August 2nd was the night of July 19-20. Tr. 2/75-77; A. 168-170. The last time he

---

[4] According to a police report admitted as an exhibit during an evidentiary hearing on Parsons' pretrial motion to suppress, law enforcement agents also recovered an unloaded Ruger firearm and ammunition from the pocket of a sweatshirt hanging in the bedroom closet and an unloaded Glock firearm with ammunition from a shoe box within a closet organizer in that same closet. Doc. 88-6; Add. 47. A photograph of that closet was introduced into evidence at trial as part of Exhibit 13 and is set forth at Add. 63. No testimony or other evidence respecting the recovery of the firearms was introduced or elicited at trial.

was there at all was July 31st, when he arrived with Bean and stayed for less than 20 minutes, while Bean remained inside the apartment alone for a longer period. *Id.* at 47-48,74; A. 140-141, 167. Bean was also there for several hours on both August 1st and August 2nd. *Id.* at 74-75; A. 167-168.

On cross-examination, Lattanzio testified that there were no drugs or drug paraphernalia in plain view in the apartment when it was searched on August 2, 2021. Tr. 2/75; A. 168. The only fentanyl recovered was in a satchel Bean was carrying at the time of his arrest. *Id.* Materials consistent with marijuana smoking were found inside Bean's vehicle, which was also searched. *Id.* at 78-80; A. 171-173. Lattanzio acknowledged that no latent fingerprint testing was carried out on any of the drugs or other evidence recovered during the course of the investigation. *Id.* at 109; A. 202.

Towards the beginning of his direct testimony, Detective Lattanzio defined "stash house" as "a location that's primarily used to hide drugs and package drugs and has a primary distribution location." Tr. 1/132; Add. 58. At the end of his direct examination, he provided the following testimony:

> Q:   Based on what we saw during this trial and everything we've learned, how do you believe the apartment was being used?

7

A: I believe it was being used as a stash house to package and distribute illegal narcotics.

Q: Who was using that stash house?

MS. HACKETT [defense counsel]: Objection.

THE COURT: Overruled.

A: Malik Bean and Malik Parsons.

Tr. 2/71; Add. 61.

### b. Other witnesses.

Adriana DiLalla, a forensic chemist with the Drug Enforcement Agency, analyzed Trial Exhibit 9, the plastic baggies retrieved from the trash by Detective Lattanzio. She found that they contained fentanyl residue. Tr. 2/126-129; A. 219-222. Christopher Benintendo, a senior forensic chemist with the DEA, analyzed materials seized from Apartment A311 and from Bean upon his arrest. Trial Exhibits 14 and 15, seized from the apartment, contained 697.6 grams of cocaine and 273 grams of cocaine base, respectively. *Id.* at 139-145; A. 232-238. Trial Exhibit 16, seized from Bean, contained 126.2 grams of fentanyl and 13.7 grams of cocaine base. *Id.* at 146-148; A. 239-241.

Mansfield Police Officer David Kinehan testified that he stopped a Jeep Cherokee on April 8, 2021 due to an expired registration. Parsons, who was driving,

was the registered owner. He told Kinehan that he lived at One Mansfield Apartments, #310, and that he had moved there a few months ago. A consensual search of the vehicle was conducted, and no contraband was found. Tr. 2/150-159; A. 243-252. Following Kinehan's testimony, the government rested. Parsons moved for a required finding of not guilty, which was denied. *Id.* at 160-161; A. 253-254.

### 2. The defense case.

Jacqueline Payne, Parsons' grandmother, was called as a defense witness. She testified that Parsons lives with her in Dorchester and was living there during the summer of 2021. She does not allow marijuana or alcohol in her apartment. She testified that Parsons and Bean are cousins. Tr. 2/162-166; A. 255-259. Following her testimony, Parsons rested. *Id.* at 167; A. 260. Prior to the charge conference, he renewed his motion for a required finding of not guilty, which was denied. Tr. (1/23/25), pp.17-19.

### 3. Closing arguments.

In his closing, the prosecutor described what was discovered in Apartment A311 during the search. "There's no doubt," he added, "that Apartment A311 was a stash house." Tr. 3/13. He summarized the evidence about Parsons' connection to that apartment and his conduct during the course of the investigation and asked the jury to convict him on both counts. *Id.* at 7-14.

In her closing, defense counsel acknowledged that since drugs were present in the apartment on August 2nd, "we can call it a stash house." Tr. 3/15. She added that the apartment was used for other things as well, including sleeping, smoking marijuana, watching television, and storing Bean's clothes. *Id.* at 15-16. She stated that "when Mr. Bean manufactures base from cocaine and packages the drugs, mixes them, he did it alone." *Id.* at 18. She noted that Parsons had most recently been in the apartment on July 31st (for only 18 minutes), and that Bean was there alone several times thereafter. *Id.* at 18-19. "[I]t seems pretty clear," she argued, that "Mr. Bean mixed or cooked cocaine in that apartment and packaged the drugs that were then found in his satchel when he's arrested a few minutes later." *Id.* at 19-20.

Counsel stressed that Parsons was not present when the drugs were packaged, that he was never found with drugs himself, and that there were no drugs in his car when it was searched by Officer Kinehan. *Id.* at 25. She noted that there were no drugs found in plain view during the search, and that none of the recovered packages of drugs was tested for fingerprints. *Id.* at 17, 25. "I ask you not to lump him [Parsons] in with his cousin [Bean]," she concluded, in urging the jury to find Parsons not guilty on both counts. *Id.* at 25-26.

During a brief rebuttal, the prosecutor argued that whatever else the apartment was being used for was not relevant to its role in the production and distribution of

drugs. Tr. 3/26. He stated that there was no requirement or need to conduct fingerprint analysis. *Id.* at 27. He emphasized Parsons' connection to the apartment, including his throwing out trash containing fentanyl residue. *Id.* at 28-29.

### C. Sentencing Proceedings.

#### 1. Sentencing Guidelines calculation set forth in Presentence Investigation Report.[5]

The Presentence Investigation Report ["PSR"] grouped the two counts of conviction together and calculated the cumulative drug weight at Base Level 30 (1,000-3,000 kilograms of converted drug weight). PSR, ¶20; S. Add. 7. A two-level upward adjustment was applied under U.S.S.G. §2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. *Id.* at ¶22; S. Add. 7. In applying a separate, two-level upward adjustment for possession of a firearm pursuant to U.S.S.G. §2D.1(b)(1), PSR, ¶21; S. Add. 7, the PSR simply stated (in ¶13) that two firearms were among the items seized from inside the apartment during the search on August 2, 2021. S. Add. 6.

Based upon a base offense level of 30 and the two upward adjustments, Probation calculated Parsons' total offense level as 34. PSR, ¶29; S. Add. 7. His criminal history score was zero, so he was placed in Criminal History Category I.

---

[5] In accordance with this Court's directives, this document is set forth in a separately-filed sealed Addendum ["S. Add."].

*Id.* at ¶33; S. Add. 8. Accordingly, the PSR calculated his guideline imprisonment range as 151 months to 188 months, with a statutory, mandatory minimum term of imprisonment of five years (60 months). PSR, ¶¶68-69: S. Add. 14 .

### 2. Parsons' objections to the PSR guidelines calculation.

As set forth in the Addendum to the PSR, Parsons objected to the upward adjustment for possession of a firearm. He noted that Apartment A311 was located inside a luxury apartment building with keyed entry, staff on duty, and substantial security surveillance. He added that he and his co-defendant were cousins, there was no history of violence at the apartment; and it was not a place where customers came to purchase drugs. Accordingly, he argued, it was not reasonably foreseeable to him that Bean would possess firearms there, PSR Addendum at 22; S. Add. 22.

In response, the Probation Officer cited Application Note 11(A) to U.S.S.G §2D1.1, which provides that the enhancement should be applied if the weapon was present unless it is clearly improbable that the weapon was connected with the offense. She added: "Even if it is true that the defendant did not have direct knowledge of the firearms, the Probation Officer maintains that the co-defendant's possession of them was reasonably foreseeable to him ....." PSR Addendum at 23; S. Add. 23. She concluded the two-level enhancement was properly applied. *Id*.

Parsons also objected to the failure of the Probation Office to grant him a

downward adjustment in offense level as a zero-point offender pursuant to U.S.S.G. §4C1.1. PSR Addendum at 24; S. Add. 24. He argued that he did not personally "possess" any firearm, and there was no evidence he was aware Bean had brought firearms into the apartment, noting that they were found hidden in a bedroom closet. *Id.* In response, the Probation Officer maintained, based upon unspecified evidence, that Parsons "himself" possessed those firearms, so he did not qualify for a two-level reduction under §4C1.1. *Id.* at 24; S. Add. 24. The Probation Officer acknowledged that if the court found Parsons did not possess a firearm in connection with the offense, "then the zero-point offender reduction would apply, and the offense level would be reduced by two levels." *Id.*

### 3. The government's sentencing memorandum.

In its sentencing memorandum, the government agreed with the guidelines calculation as set forth in the PSR. With respect to the firearms enhancement, the government cited several decisions of this Court in arguing that absent exceptional circumstances, a co-defendant's possession of a dangerous weapon is reasonably foreseeable to a defendant participating in a large-scale drug conspiracy. Doc. 221 at 3-4; A. 347-348. Accordingly, the government argued, "it was at least reasonably foreseeable to [Parsons] that there would be firearms in the stash apartment" and that the presence of those firearms both "properly support the application of the two-

13

level dangerous weapon enhancement, and preclude any reduction for zero-point

offender, per USSG §4C1.1(a)(7)." Id. at 4-5; A. 348-349. [6]  It recommended that

the  court impose a sentence of 100 months' imprisonment. *Id.* at 8; A.  352.

### 4**.**    **The defendant's sentencing memorandum.**

In his sentencing memorandum, Parsons asked the district court to depart

downward in base  offense level from 30 to 26 by treating powder cocaine and

cocaine base equivalently, rather than applying a multiplier in calculating the drug

weight attributable to cocaine base.  Doc. 220, p. 7; A. 342.   Parsons noted that the

plea agreement between the government and Bean reflected a base offense level of

26, rather than 30,  for the very same drugs attributable to Parsons.  He argued that

a departure to level 26 was justified, *inter alia*, to avoid an unwarranted sentencing

disparity between Parsons and Bean.  *Id.*

With respect to the enhancement for possession of a dangerous weapon,

Parsons asserted that he should not receive that upward  adjustment because it was

not reasonably foreseeable to him that Bean would possess a firearm.  Doc. 220, pp.

5-6; A. 340-341.  He cited the same facts and circumstances set forth in his objection

to the Presentence  Report  on that subject, discussed *supra*. *Id.*  Parsons  asked the

---

[6]    Parsons argues *infra* that this conflation of U.S.S.G. §2D1.1(b)(1) with §4C1.1(a)(7), subsequently adopted by the district court, was legally erroneous .

court to reduce his offense level by two levels pursuant to U.S.S.G. §4C1.1 since he had zero criminal history points. *Id.* at 5; A. 340. His sentencing memorandum also addressed his relevant background, including his impaired mental health at the time of the offense. He attached multiple letters of support attesting to his good character, and requested a sentence of 60 months' imprisonment. *Id.* at 8; A. 343.[7/]

### 5. **Sentencing hearing.**

At the sentencing hearing on April 29, 2025, the district court began by addressing Parsons' objections to the PSR. With respect to the firearms enhancement under §2D1.1, defense counsel argued that the cases cited by the government were distinguishable, and that there shouldn't be "an automatic inference" that Bean's possession of firearms was foreseeable to Parsons. Tr. (4/29/25), pp. 5-7; A. 358-360. In response, the district court cited Application Note 11(A) to U.S.S.G. §2D1.1, noting that it "seems to be on point." *Id.* at 7; A. 360.

The government argued that it was the defendant's burden to rebut the inference that he knew firearms were present and that, absent special circumstances, the enhancement applies whenever drugs and guns are found together. *Id.* at 8-9; A. 361-362. The government added that the presence of the

---

[7/] The attachments to the defendant's sentencing memorandum are omitted from the record-appendix.

firearms was reasonably foreseeable to the defendant. *Id*. at 9; A. 362.

The court overruled Parsons' objection and applied the two-level upward adjustment under §2D1.1(b)(1). *Id.* at 10; A. 363. It then refused to grant Parsons a two-level downward adjustment under §4C1.1 for having zero criminal history points, stating: "**[O]f course, this has already been determined by virtue of the prior ruling with the firearms**." *Id.* at 11; A. 364. (*emphasis supplied*) [8/]

The district court endorsed the converted drug weight as set forth in the PSR (1,478.8 kilograms of marijuana). Since that weight fell between 1,000 and 3,000 kilograms, a base offense level of 30 applied per U.S.S.G. §2D1.1(c)(5). Tr. (4/29/25), p. 12; A. 365. Defense counsel asked the court to depart downward from level 30 to level 26, and the court declined to do so. *Id.* at 13; A. 366. Accordingly, it found Parsons' total offense level to be 34 with a criminal history category of I, resulting in a guideline sentencing range of 155 to 188 months' imprisonment. *Id.*

The government recommended a sentence of 100 months' imprisonment. It recognized that Bean had received a sentence of 70 months imprisonment, "driven by the exact same drugs ... that your Honor needs to consider for this defendant." Tr. (4/29/25), p.19; A. 372. However, the government noted, its policy of treating

---

[8/] With respect to this adjustment, the government asserted that the firearms found in the apartment were "clearly possessed in connection with the offense," and the court agreed. *Id.* at 12; A. 365.

16

powder cocaine and cocaine base in a one-to-one ratio had since been rescinded by the Attorney General on February 2, 2025. *Id.* at 20; A. 373. It also pointed out that Bean had pled guilty and received a three-level downward adjustment for acceptance of responsibility. *Id.* Without that adjustment, the government added, a drug quantity base level of 26 rather than 30 would have produced a guideline range of 97-121 months' imprisonment for Bean. *Id.* at 21; A. 374.

Defense counsel asked the court to impose a sentence of 60 months' imprisonment. Tr. (4/29/25), p. 21; A. 374. She noted that Bean (who was convicted of a firearms charge, while Parsons was not), received a 70-month sentence and served a little over four years in custody. *Id.* at 22-23; A. 375-376. She added that Parsons, who had no prior record, was suffering from depression and opioid addiction at the time he committed these offenses. *Id.* The court imposed a sentence of 84 months' imprisonment to be followed by four years of supervised release, explaining to Parsons that his sentence was longer than Bean's "because, unlike you, he accepted responsibility for his crime. *Id.* at 27-28; A. 380-381.

### SUMMARY OF THE ARGUMENT

Testimony by the lead investigator that he believed Parsons and his co-defendant were using a specified apartment to package and distribute illegal drugs usurped the jury's role, endorsed the government's theory of the case, and

effectively told the jury that the defendant was guilty. Based on this Court's precedent, such testimony was clearly improper lay opinion under F.R. Evid. 701. Accordingly, the district court abused its discretion in admitting such testimony over objection. Since that testimony went to the heart of the case, its erroneous admission was not harmless, and the defendant is entitled to relief. (pp. 19-24)

There was insufficient evidence presented to the district court that Parsons either possessed the firearms found in the apartment or that it was reasonably foreseeable to him that Bean would possess those firearms. This case is readily distinguishable from those where this Court has upheld a firearms enhancement under U.S.S.G. §2D1.1 based on reasonable foreseeability. Accordingly, the district court clearly erred in applying that upward adjustment to Parsons, and he is entitled to resentencing. (pp. 24-33)

The district court committed legal error in treating the criteria for imposing an upward firearms adjustment under §2D1.1 and refusing to grant a downward adjustment under §4C1.1(7) for having zero criminal history points as equivalent. Since there was insufficient evidence that Parsons personally "possessed" a firearm in connection with the offense, he was entitled to a two-level reduction in offense level, whether or not his co-defendant's possession of firearms was reasonably foreseeable to him. (pp. 33-37 ).

**ARGUMENT**

**I.  THE DISTRICT COURT'S ADMISSION OF DETECTIVE LATTANZIO'S OPINION THAT PARSONS WAS USING APARTMENT A311 TO PACKAGE AND DISTRIBUTE ILLEGAL DRUGS WAS A PREJUDICIAL ABUSE OF DISCRETION.**

**A.  Summary of Applicable Law.**

**1.  Lay opinion evidence in general.**

The admission of lay opinion testimony is governed by F. R. Evid. 701, which states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

The "touchstone" for the admissibility of lay opinion testimony is whether it has "the potential to help the jury." *United States v. Spencer,* 873 F.3d 1,14 (1st Cir. 2017); *United States v. Rodriguez*, 115 F.4th 24, 40 (1st Cir. 2024).

The "helpfulness" requirement is not met "where [a] witness is no better suited than the jury to make the judgment at issue." *United States v. Belanger*, 890 F.3d 13, 25 (1st Cir. 2018). *See also Rodriguez,* 115 F.4th at 41; *United States v. Vazquez-Rivera,* 665 F.3d 351, 358 (1st Cir. 2011); *United States v. Sanabria,* 645 F.3d 505, 515 (1st Cir. 2011); *United States v. Meises,* 645 F.3d 5,17 (1st Cir. 2011).

The key problem with such lay opinion testimony is that it effectively usurps the jury's fact-finding function. *United States v. Garcia-Sierra*, 994 F.3d 17, 26-27 (1st Cir. 2021); *Vazquez-Rivera*, 665 F.3d at 361. That problem is compounded when the opinion is presented by a law enforcement agent who bears the government's imprimatur. *Meises*, 645 F.3d at 17-18.

### 2. Impermissible lay opinion testimony suggesting guilt.

One particularly egregious variety of impermissible lay opinion is testimony by a law enforcement agent suggesting to the jury that the defendant is guilty based on the totality of the evidence. *E.g. United States v. Agramonte-Quezada*, 30 F.4th 1,19 (1st Cir. 2022); *United States v. Perez-Vasquez*, 6 F.4th 180, 199 (1st Cir. 2021); *Garcia-Sierra*, 994 F.3d at 26; *Vazquez-Rivera*, 665 F.3d at 357-361. An agent's testimony "may not shade into a statement of the government's theory of the case or conclusory statements about the defendant's culpability." *United States v. Rodriguez-Adorno*, 695 F.3d 32, 38 (1st Cir. 2012). "Having [an agent] so testify amount[s] to simply dressing up argument as evidence." *Garcia-Sierra*, 994 F.3d at 27. Indeed, testimony which tells the jury what result to reach is "inimical to Rule 701." *Belanger*, 890 F.3d at 25.

For example, in *Meises*, the government's theory was that both defendants were participants in a drug conspiracy, while the defense was mere presence. At

trial, the lead  government agent testified to the roles  he believed were played by each defendant. As this Court explained in reversing the defendants' convictions:

> The jurors were told that, based on the same evidence before  them, an experienced government agent had rejected appellant's  mere presence defense and concluded that they were participants in the conspiracy. Given the effect on juries of the government's imprimatur  [citations omitted], it was patently unfair for [the agent] to present his view of appellants' culpability.

645 F.3d at 18.

Similarly, in *Vazquez-Rivera*, a child pornography case, the government's theory was that the defendant had used a specific screen name in conversing on-line with an agent posing as a minor.  The defense was that the government could not prove that the *defendant* had used that screen name or participated in those on-line chats.  The agent testified at trial that "we" identified the defendant as the person using that screen name.  665 F.3d at 357.  Although the testimony was not objected to at trial, this Court reversed on the grounds that it improperly "addressed the ultimate issue before the jury" and  "usurped the jury's role." *Id.* at 357, 361.

### 3. Standard of review.

This  Court reviews the admission of lay opinion testimony under F.R.Evid. 701 for abuse of discretion. *United States v. Pontz*, 132 F.4th 10, 19 (1st Cir. 2025). More precisely, it reviews the lower court's legal interpretation of the Rules of

Evidence *de novo* and the decision to admit or exclude evidence under those rules for abuse of discretion. *United States v. Phoeun-Lang*, 672 F.3d 17, 23 (1st Cir. 2012). An abuse of discretion may include, *inter alia*, "a palpable error of judgment." *United States v. Irizarry-Sisco*, 87 F.4th 38, 44 (1st Cir. 2023). Evidentiary rulings are reviewed using a balanced approach. *Id*. at 41-42.

In determining whether preserved, non-constitutional error warrants judicial relief, the Court applies a harmless error standard. *United States v. Sanabria*, 645 F.3d 505, 516 (1st Cir. 2011). A non-constitutional evidentiary error will be deemed harmless if it is "highly probable that the error did not influence the verdict." *United States v,. Flores-De-Jesus*, 569 F.3d 8, 27 (1st Cir. 2009). As this Court has explained:

> [A] harmlessness determination demands a panoramic, case-specific inquiry considering, among other things, the centrality of the tainted material, its uniqueness, its prejudicial impact, the uses to which it was put during the trial, the relative strengths of the parties' cases, and any telltales that furnish clues to the likelihood that the error affected the factfinder's resolution of a material issue.

*United States v. Sepulveda*, 15 F.3d 1161, 1182 (1st Cir. 1993). On a criminal appeal, the government bears the burden of establishing that an error was harmless. *Sanabria*, 645 F.3d at 516; *Meises*, 645 F.3d at 24.

**B. Application of Law to Facts.**

**1. Detective Lattanzio's testimony that Parsons was using Apartment A311 as a stash house to package and distribute illegal drugs was clearly inadmissible.**

Detective Lattanzio's testimony that defendant Parsons was using Apartment A311 as a stash house to package and distribute illegal drugs exemplifies what this Court has deemed improper lay opinion evidence under F. R. Evid. 701. First, the testimony was deliberately elicited by the government. Second, the prosecutor specifically asked Lattanzio to express an opinion based on "everything we've learned." Tr. 2/71; Add. 168.[9] Third, the elicited testimony endorsed the government's theory of the case (that Bean and Parsons were co-conspirators) and rebutted the defense theory (that Bean was a drug dealer and his cousin, Parsons, was merely present). Fourth, the testimony amounted to an expression of opinion, based on the totality of the evidence, that Parsons was guilty. Fifth, defense counsel objected to the question which elicited the improper testimony.

In sum, Detective Lattanzio's testimony usurped the jury's exclusive role to assess the evidence, placed the imprimatur of the government's lead agent on its theory of the case, and effectively told the jury what result to reach. While every

---

[9] The use of the pronoun "**we**" and the phrase "everything **we've** learned" improperly suggested to the jury that the prosecutor was placing his own imprimatur on Lattanzio's opinion.

case is different, his lay opinion testimony was comparable to the testimony deemed inadmissible in *Meises* and *Vazquez-Rivera*. As in those cases, the lay opinion testimony elicited from Lattanzio was improper, and it was a clear abuse of discretion to admit it over objection. [10/]

### 2. Relief is warranted.

Detective Lattanzio's opinion testimony went directly to the heart of the case. As in *Meises* and *Vazquez-Rivera*, that testimony usurped the jury's role and endorsed the government's theory of the case. Under the circumstances, it is not "highly probable that the error did not influence the verdict." The admission of this improper testimony was not harmless error, so Parsons is entitled to relief.

## II. THE DISTRICT COURT CLEARLY ERRED IN IMPOSING A TWO-LEVEL UPWARD ADJUSTMENT PURSUANT TO U.S.S.G. §2D1.1(b)(1) FOR POSSESSION OF A DANGEROUS WEAPON.

### A. Summary of Applicable Law.

### 1. Adjustments to offense level under the Guidelines.

It is well-settled that a sentencing enhancement under the Guidelines must be

---

[10/] Lattanzio's expression of belief that Parsons was using Apartment A311 to package and distribute illegal drugs went far beyond the government's motion in limine seeking permission to present testimony about the "common practices of drug traffickers." Add. 49. Indeed, it ran directly afoul of Parsons' warning in his response to that motion that such testimony "should not transcend into ultimate conclusions." Add. 53.

supported by a preponderance of the evidence. *United States v. Burgos-Figueroa*, 778 F. 3d 317, 320 (1st Cir. 2015). With respect to upward adjustments in offense level, the government has the burden of proving the relevant facts. *United States v. Woodward*, 277 F. 3d 87, 91 (1st Cir. 2002); *United States v. Sklar*, 920 F. 2d 107, 112 (1st Cir. 1990). Pursuant to U.S.S.G. §1B1.3(a)(1)(B), a defendant in a joint criminal undertaking is deemed accountable for "reasonably foreseeable" conduct carried out by a co-defendant in furtherance of their joint criminal venture. *E.g. United States v. Hilario-Hilario,* 529 F. 3d 65,77 (1st Cir. 2008).

**2.    Upward adjustment for possession of a firearm in connection with a drug offense**.

Sentencing for drug offenses is governed by §2D1.1 of the Guidelines. There are a number of upward enhancements prescribed for specific offense characteristics under that guideline provision, including:

> If a dangerous weapon (including a firearm) was possessed, increase by two levels.

U.S.S.G. §2D1.1(b)(1). In order for a defendant to receive such an enhancement based on a co-defendant's possession of a firearm, the government must prove either that the defendant knew the co-defendant possessed that firearm during the conspiracy or that the co-defendant's possession of the firearm was reasonably foreseeable to the defendant. *United States v. Guia-Sendeme*, 134 F4th 611, 626 (1st

25

Cir. 2025). Either direct knowledge or foreseeability must be established. *Id.* This Court has repeatedly held that a permissive inference of foreseeability may be drawn when the offense involved an exchange of controlled substances for a large amount of cash. *E.g. United States v. Hernandez,* 964 F.3d 95, 106 (1st Cir. 2020); *United States v. Thangsophaporn,* 503 F3d 51, 58 (1st Cir. 2007); *Bianco*, 922 F.2d at 912.

Commentary adopted by the United States Sentencing Commission includes an application note to §2D1.1 stating in pertinent part:

> The enhancement for weapons possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.

Application Note 11(A) to U.S.S.G. §2D1.1.[11] Based on this application note, once the government has shown both that a firearm was present and that either: (1) the defendant possessed the firearm; (2) the defendant knew that a co-defendant possessed the firearm; or (3) the possession of the firearm by a co-defendant was reasonably foreseeable to the defendant, the burden shifts to the defendant to show it is clearly improbable that the weapon was connected with the offense. This Court has consistently deferred to and applied the "clearly improbable" test described in

---

[11] In earlier versions of the Guidelines, this same application note was numbered 3.

26

this Sentencing Commission commentary in reviewing challenges to the imposition of the firearms enhancement by a sentencing judge. *E.g. Guia-Sendeme*, 134 F.4th at 626; *Hernandez*, 964 F.3d at 105-106; *United States v. Gonzalez-Vazquez*, 34 F.3d 19, 24 (1ˢᵗ Cir. 1994)( "A sentencing court must, of course, honor this type of instruction."); *United States v, Ovalle-Marquez*, 36 F.3d 212, 224 (1ˢᵗ Cir. 1994).

### 3. Standard of review.[12/]

A claim on appeal that the district court committed error in applying the Sentencing Guidelines is procedural in nature. *Guia-Sendeme*, 134 F.4th at 616. The appellate court reviews the district court's determinations about the meaning and application of the guideline provision *de novo,* its fact findings, which must be supported by a preponderance of the evidence, for clear error, and its exercise of judgment for abuse of discretion. *Id. ; United States v. Waller*, 89 F.4th 173, 180 (1ˢᵗ Cir. 2023); *United States v. Mercer*, 834 F3d 39, 47 (1ˢᵗ Cir. 2016). A district court's error in calculating the applicable guideline range requires resentencing where it may have affected the sentence imposed. *Guia-Sendeme*, 134 F.4th at 624; *United States v. Lacouture,* 835 F.3d 187, 189 (1ˢᵗ Cir. 2016).

---

[12/] This subsection applies to Argument III, *infra*, as well.

### B. Application of Law to Facts.

#### 1. There was no actual or constructive possession of firearms by Parsons.

There was a paucity of evidence, let alone a preponderance, that Parsons actually or constructively possessed either of the firearms found hidden inside a sweatshirt and a shoe box in a bedroom closet during the search of Apartment A311 on August 2, 2021. There was a photograph of that closet admitted at trial, appended hereto at Add. 63, but it doesn't show any firearms, which were clearly not in plain view. Indeed, the government presented absolutely no evidence at trial about the presence of any firearms, and it dismissed firearms charges against Parsons (which co-defendant Bean had pled guilty to). Moreover, Parsons had last spent the night in the apartment two weeks before the search, and he had not been there at all in several days. Detective Lattanzio testified that none of the evidence in the case was tested for fingerprints. No additional evidence on this subject was submitted to the district court in connection with Parsons' sentencing. Based on the evidence (and lack of evidence) before the district court, there was no basis to find by a preponderance of the evidence that Parsons was in actual or constructive possession of the firearms recovered during the search.

Significantly, the government did not even rely on a theory of actual or

constructive possession in its sentencing memorandum.  Rather, it claimed (at pp. 4-5) that "it was at least reasonably foreseeable to [Parsons] that there would be firearms in the stash apartment . . . ."  A. 348-349.  At the sentencing hearing, the government did  assert, without citing any specific evidence, that the record supported "a plausible finding" that Parsons constructively possessed those firearms.  Tr. (4/29/25), p. 9; A. 362.  Yet an unsupported  plausible finding falls far short of proof  by a preponderance of the evidence.

For its part, the Probation Department (in responding to Parsons' objection to the draft PSR), claimed that "a preponderance of the evidence supports that the defendant himself possessed the firearms that were stored in the apartment where no one resided and to which he had access."  PSR,  p. 24; S. Add.  24.  Yet nowhere in the PSR is that putative evidence detailed.  Without such evidence, a finding that Parsons actually (or constructively) possessed the firearms at issue would be rank speculation, not proven by a preponderance of the evidence, as required.

### 2. Bean's possession of firearms in the apartment wasn't reasonably foreseeable to Parsons.

This  theory is admittedly a closer question, but the evidence in this case does not support a finding of reasonable foreseeability by a preponderance, either.  Bean and Parsons were cousins.  As  noted  above and in Parsons' sentencing

memorandum, Apartment A311 was located in a luxury apartment complex with limited access and security on the premises. Significantly, there was no evidence that any exchange of drugs for money or any other transaction ever took place inside the apartment. Indeed, the only people ever seen coming in and out of that secure apartment during the months it was under surveillance were Bean, Parsons, or guests who accompanied Bean on "very rare" occasions. Tr. 1/148-150; A. 67-69. There was not a shred of evidence presented to the district court which would make it reasonably foreseeable to Parsons that Bean had secreted firearms there.

The facts here distinguish this case from those involving an exchange of a large amount of drugs for a large amount of cash, relied on by the government in its sentencing memorandum at pp. 3-4 (A. 347-348). In *Bianco*, for example, there was an exchange of 100 pounds of marijuana for eighty thousand dollars in cash. 922 F.2d at 913. The defendant in *Hernandez* admitted that the transaction there, which involved the delivery of 60 kilograms of cocaine, was" extremely dangerous." 964 F.3d at 106. *See also Fermin,* 771 F.3d at 83 ( defendant was in possession of a suitcase containing fifty thousand dollars' worth of drugs and a loaded firearm).

In all of those cases, this Court upheld the imposition of a firearms enhancement on the defendant based on the theory that the possession of a firearm was reasonably foreseeable to him. Here, by contrast, there were no drug

transactions going on inside the apartment and no particular reason why Parsons should have foreseen that Bean had secreted firearms there. [13] Accordingly, imposing a firearms enhancement on Parsons based on a theory of reasonable foreseeability was unwarranted. [14]

### 3. Application Note 11(a) to §2D1.1 should no longer be deferred to after *Kisor v. Wilkie*.

In *Kisor v. Wilkie*, 588 U.S. 558, 574-575 (2019), the Supreme Court held that courts should not defer to an agency's interpretation of its own rules unless those rules are truly ambiguous. In the wake of *Kisor*, some circuits have declined to rely

---

[13] Parsons recognizes that this Court has repeatedly observed that "firearms are common tools of the drug trade." *E.g. Bianco*, 922 F.2d at 912. Surely that truism cannot be enough to make the possession of a firearm by a co-defendant "reasonably foreseeable" in every drug case!

[14] At the outset of the sentencing hearing defense counsel argued that Parsons should not receive the firearms enhancement because Bean's possession of firearms inside the apartment wasn't reasonably foreseeable to him. Tr. (4/29/25) at 5-7; A. 358-360. In response, the Court asked counsel about Application Note 11(A), "that provides that this enhancement should be applied unless it is clearly improbable that the weapon was connected with the offense.... What about that note that seems to be on point?" *Id.* at 7; A. 360. Yet that application note (which addresses the connection between a firearm and a drug offense) has no bearing upon the government's threshold burden to connect that firearm to a particular defendant by a preponderance of the evidence. The district court's conflation of these two separate requirements appears to have been legal error which may well have affected its decision to impose the enhancement on Parsons.

on U.S.S.G. commentary as authoritative. *E.g. United States v. Riccardi*, 989 F.3d 476, 483-485 (6th Cir. 2021); *United States v. Nasir*, 982 F3d 144, 160 (3rd Cir. 2020)(*en banc*). This Court has not gone that far. *See United States v. Lewis*, 963 F.3d 16, 23-24 (1st Cir. 2020). Accordingly, under the law-of-the-circuit doctrine, this Court would presumably continue to adhere to the "clearly improbable" standard set forth in Application Note 11(A) and applied by the district court in this case. Nevertheless, Parsons contends that the Court should reconsider that position in light of *Kisor* and rule that the reliance of the district court on that application note in this case was legally erroneous.

### 4. Parsons is entitled to resentencing.

As noted above, a district court's error in calculating a defendant's guideline range requires resentencing when the error affected or may have affected the sentence imposed. *E.g. Guia-Sendeme*, 134 F.4th at 624. Here, there is nothing in the record suggesting that Parsons would have received the same sentence in the absence of the firearms enhancement. Moreover, if he had not received that enhancement, Parsons would have presumably received a two-level downward adjustment as a zero criminal history point offender under U.S.S.G. §4C1.1, as well. A total swing of four levels would have substantially reduced Parsons' guideline sentencing range from 151-188 months to 97-121 months. Under the circumstances,

resentencing is required.

**III. EVEN IF IT WERE PERMISSIBLE TO IMPOSE A FIREARMS ENHANCEMENT ON PARSONS, THE DISTRICT COURT ERRED IN REFUSING TO GRANT HIM A TWO-LEVEL REDUCTION IN OFFENSE LEVEL PURSUANT TO U.S.S.G. §4C1.1 SINCE HE HAD ZERO CRIMINAL HISTORY POINTS AND DID NOT PERSONALLY POSSESS A FIREARM.**

  **A. Summary of Applicable Law.**

An amendment to the Sentencing Guidelines effective November 1, 2023 provides for a downward adjustment of two offense levels for defendants who have zero criminal history points and satisfy other specified criteria, including:

> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense.

U.S.S.G. §4C1.1(a). There has been a paucity of reported case law interpreting or applying this recent provision. However, the disqualifying conduct specified in subsection (7) is quite similar to that set forth in the so-called "safety valve" provision, U.S.S.G. §5C1.2(a)(2), which requires, *inter alia*. that the defendant "did not possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."

The safety valve provision has been around since 1994, *United States v. Miranda-Santiago*, 96 F.3d 517, 527-528 (1ˢᵗ Cir. 1996), and there are numerous

appellate decisions by this Court construing it. That precedent clearly establishes that there is nothing inherently inconsistent about applying both the firearms enhancement and the safety valve to the same defendant in the same case. For example, in *United States v. Figueroa-Encarnacion*, 343 F.3d 23, 34-35 (1ˢᵗ Cir. 2003), the defendant received a firearms enhancement based on his co-defendant's possession of a firearm, and the district court refused to grant him the safety valve. On appeal, the defendant did not challenge the firearms enhancement, but argued that he should still be eligible for the safety valve. This Court agreed, noting that "[f]ive of our sister circuits have found that application of § 5C1.2 is not precluded by a weapons possession sentence enhancement based on co-conspirator liability." *Id.* at 34. The Court held that "in order for the safety valve to be precluded because of a firearm enhancement, a defendant must possess or induce another to possess a firearm in accordance with § 5C1.2(a)(2)." *Id.* at 35. "[A]ny automatic equation of the possession of a firearm by another and unavailability of the safety valve," it added, "is mistaken...." *Id.*

Similarly, in *United States v. McLean*, 409 F.3d 492 (1ˢᵗ Cir. 2005), all three defendants received firearms enhancements based on a co-defendant's possession of a firearm, and all three were deemed ineligible for the safety valve. On appeal, they challenged only the safety valve ruling. This Court concluded that two of the

34

defendants did qualify for the safety valve since they did not "possess" the firearm, and their cases were remanded for resentencing. *See also United States v. Anderson*, 452 F.3d 87, 90-91 (1st Cir. 2006) ( No contradiction between defendant's receiving both firearms enhancement and safety valve because "[t]he burdens for establishing the applicability of the safety valve reduction and the weapon enhancement are different."). These safety valve decisions by this Court should apply equally to the analogous provision set forth at §4C1.1(a)(7).

Based on that body of precedent coupled with this Court's construction of §2D1.1, it is clear that imposition of that enhancement does not and should not necessarily disqualify a zero criminal history point defendant from receiving a two-level reduction in offense level under §4C1.1. The firearms enhancement applies if a co-defendant's possession of a firearm is reasonably foreseeable to the defendant, but there is no basis to deny relief under the zero criminal history points provision on such grounds since §4C1.1(a)(7), like the safety valve, requires "possession" **by the defendant himself.** Moreover, to the extent that it is still authoritative post-*Kisor*, Application Note 11(A) to §2D1.1 imposes a burden on the defendant to show that "it is clearly improbable that the weapon was connected with the offense**."** There is no comparable requirement to qualify for the safety valve, *see Anderson*, 452 F.3d at 90-91, nor should there be one to qualify for the zero criminal history points

35

adjustment, either.

**B.     Application of Law to Facts.**

At the sentencing hearing, after rejecting Parsons' PSR objection to a firearms enhancement, the district court responded to his separate objection for not receiving a downward adjustment as a zero point offender as follows:  "[O]f course, this has already been determined by virtue of the prior ruling with the firearms."  Tr. (4/29/25), p. 11; A. 364.  In short, the court treated the two provisions (§§ 2D1.1 and 4C1.1(a)(7)) as two sides of the same coin.  Yet, as the safety valve decisions discussed above demonstrate, what must be shown under each provision regarding a defendant's connection to a firearm is clearly different.  The  district court's conflation of the two was legal error, which this Court should review *de novo*. [15]

Once the correct legal standard  (possession) is applied, it is clear that there was  insufficient  evidence  presented  to  the  district  court  to  show  that  Parsons possessed either of the firearms found hidden in the apartment.  Without such a finding, as the PSR itself acknowledged, "then the zero-point offender  reduction

---

[15]     The same legal error was committed by the government in its sentencing memorandum, where it argued (at pp. 4-5)  that "it was at least  reasonably foreseeable to [Parsons] that there would be firearms in the stash  apartment" and that the presence  of those firearms both  "properly support the application of the two-level dangerous weapon enhancement, and preclude any reduction for zero-point offender, per USSG §4C1.1(a)(7)."  A. 348-349.   Yet reasonable foreseeability would **not** disqualify Parsons from a reduction under the latter provision.

would apply, and the offense level would be reduced by two levels." PSR, p.24; S. Add. 24. If Parsons' offense level were reduced by two levels under §4C1.1, as it should have been, his guidelines range would have been lower and he may well have received a lower sentence. Surely, this Court cannot conclude the error was harmless, so Parsons is entitled to be resentenced..

## CONCLUSION

For the reasons set forth in Argument I, the defendant's convictions should be vacated and the case remanded for retrial. For the reasons set forth in Arguments II and III, the defendant's sentence should be vacated and the case remanded for resentencing.

Respectfully submitted,

**MALIK PARSONS**

By his attorney,

/s/James L. Sultan_____
James L. Sultan
First Circuit No. 10653
jsultan@rankin-sultan.com
Rankin & Sultan
1666 Massachusetts Avenue, P-16
Lexington, MA 02420
(617)720-0011

# CERTIFICATE OF SERVICE

I.    I certify that on February 13, 2026, I electronically filed this Brief and Addendum with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system: United States ( AUSA Donald Lockhart).

II.    I certify that on February 13, 2026, I served a copy of this Brief and Addendum on defendant/appellant Malik Parsons by mailing a copy, U.S. mail, first class, postage prepaid, to: Malik Parsons, FCI-Berlin, P.O. Box 9000, Berlin, NH.

/s/James L. Sultan
James L. Sultan

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I.    The foregoing brief complies with the type-volume limitation of Fed. App. P. 32(a)(7)(B) because this brief contains 8,462 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

II.    The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in monospace using WordPerfect version XP in 12-point Courier New font.

/s/James L. Sultan
James L. Sultan

February 13, 2026

Addendum

TABLE OF CONTENTS

Judgment (Doc. 223) (5/5/25). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Supplemental Narrative for Detective Patrick J. Pennie
(Mansfield Police Department)(Doc. 88-6, pp. 36-37, filed 9/30/22). . . . . . . . . . 47

Government's Motion in Limine to Admit Lay Opinion Testimony
From Law Enforcement Witnesses (Doc. 167)  (12/23/24). . . . . . . . . . . . . . . . . . 49

Defendant's Response to Government Motion in Limine to
Admit Lay Opinion Testimony (Doc. 176) (12/30/24). . . . . . . . . . . . . . . . . . . . . 53

Jury Trial Transcript Excerpt (1/21/25). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Jury Trial Transcript Excerpt (1/22/25). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Trial Exhibit #13 (Excerpt). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

U.S.S.G. §2D1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

U.S.S.G. §2D1.1 Commentary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

U.S.S.G. §4C1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
                        Sheet 1

# UNITED STATES DISTRICT COURT
## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>MALIK D. PARSONS | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number: **1: 21 CR 10343   - 2   - NMG**<br>USM Number:  76720-509<br><br>Alyssa Thrasher Hackett, Esq.<br>Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)　　1,2
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute and to Possess with Intent to Distribute 40 Grams or more of Fentanyl and 500 Grams of More of Cocaine | 08/02/21 | 1 |
| 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1) (B) | Possession with Intent to Distribute 40 Grams or more of Fentanyl and 500 Grams of More of Cocaine | 08/02/21 | 2 |

   The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☑ Count(s)　3,4　　　　　☐ is　☑ are dismissed on the motion of the United States.

   It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

4/29/2025
Date of Imposition of Judgment

_Nathaniel M. Gorton_
Signature of Judge

The Honorable Nathaniel M. Gorton
U.S. District Judge
Name and Title of Judge

05/05/2025
Date

AO 245B (Rev. 11/16) Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT: MALIK D. PARSONS
CASE NUMBER: **1: 21 CR 10343 - 2 - NMG**

Judgment — Page __2__ of __7__

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total
term of: **84** month(s)

This term consists of terms of 84 months on Counts 1 and 2 to be served concurrently.

☑ The court makes the following recommendations to the Bureau of Prisons:

The Court makes a judicial recommendation that the defendant participate in substance use treatment while in Bureau of
Prisons' custody.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

   ☐ at _____ ☐ a.m. ☐ p.m. on _____ .

   ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐ before 2 p.m. on _____ .

   ☐ as notified by the United States Marshal.

   ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

41

AO 245B (Rev. 11/16)  Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __7__

DEFENDANT:  MALIK D. PARSONS
CASE NUMBER:  1: 21  CR  10343   - 2    - NMG

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :   4   year(s)

This term consists of terms of 4 years on Counts 1 and 2, such terms to run concurrently.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
Sheet 3A — Supervised Release

DEFENDANT:   MALIK D. PARSONS
CASE NUMBER:   1: 21  CR  10343  - 2   - NMG

Judgment—Page ____4____ of ____7____

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

### U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

43

AO 245B(Rev. 11/16)    Judgment in a Criminal Case
               Sheet 3D — Supervised Release

DEFENDANT:  MALIK D. PARSONS
CASE NUMBER:  1: 21 CR 10343  - 2  - NMG

Judgment—Page  5  of  7

## SPECIAL CONDITIONS OF SUPERVISION

1. You must submit to substance use testing, not to exceed 50 drug tests per year to determine if you have used a prohibited substance. You must not attempt to obstruct or tamper with the testing methods.

44

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
              Sheet 5 — Criminal Monetary Penalties

Judgment — Page    6    of    7

DEFENDANT:  MALIK D. PARSONS
CASE NUMBER:   1: 21 CR 10343  - 2  - NMG

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 200.00 | $ | $ | $ |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| **TOTALS** | $        0.00 | $        0.00 |  |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐  the interest requirement is waived for the    ☐ fine   ☐ restitution.

    ☐  the interest requirement for the    ☐ fine   ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:   MALIK D. PARSONS
CASE NUMBER:    1: 21  CR  10343   - 2   - NMG

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ ___200.00___ due immediately, balance due

      ☐  not later than _____ , or
      ☐  in accordance with ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
      term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
      imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

SUPPLEMENTAL NARRATIVE FOR DETECTIVE PATRICK J PENNIE
Ref: **21MAS-268-AR**
Entered: 08/02/2021 @ 1644          Entry ID: M10280
Modified: 08/03/2021 @ 0819         Modified ID: M2709

On 8/2/2021, I, Detective Patrick J. Pennie of the Mansfield Police Department, assisted as the evidence scribe in the execution of (2) search warrants (*Docket # 21345W0064 & Docket #2134SW0065*). *Note: Detective Lattanzio photographed the entire scene.* Assisting with this case was also members of the Bristol County Drug Task Force and the DEA. (*See Detective Lattanzio primary report for further*).

1.      During the detainment of Mr. Bean-Bousseau by Mansfield Detective's Kerr, Lattanzio, and myself the following property was found on his person and collected by Detective Kerr:

- A black Lanyard positioned around his head containing several sets of keys.
- A black Folding Knife affixed to the elastic waistband of his shorts in the area of his bellybutton.
- A napkin containing a sandwich bag that further contained cut sandwich bags was located in his left hand.
- A blue iPhone with a black Otter box case was located in his right hand.
- A bag of a white powdery substance was located in his right shorts pocket along with a separate bag containing an off-white rock-like substance.
- A LG cellphone was located in his left shorts pocket.

2.      At the time of being detained, Mr. Bean-Bousseau was also wearing a black Luis Vuitton satchel. The following property was found to be contained within the satchel and collected by Detective Kerr:

- $2,820 U.S. Currency.
- Car Keys to a Mercedes.
- 14K Gold Chain.
- Identifying documents (MA ID, AAA card, and miscellaneous credit cards all bearing his name).

3.      The subsequent search of 1 Mansfield Ave Apartment #A311 (a one-bedroom dwelling) resulted in the ensuing seizure of the following property:

Bedroom
- A black Motorola Cell Phone was found by DEA TFO Bettencourt on top of a stack of DVD's within the top right drawer of the bedroom dresser.
- (2) Boxes of Ammunition (later discovered to be 28 MM ammunition & 9 MM ammunition) was found by DEA TFO Bettencourt in a black Tacticon Gun Light box within the top right drawer of the bedroom dresser.

Closet
- An unloaded black Ruger Firearm and (1) magazine containing approximately 17 rounds was found by DEA TFO Danner in the pocket of a blue Nike sweatshirt that was hanging on a clothing rack in the bedroom closet.
- An unloaded black Glock Firearm with (1) magazine containing approximately 20 rounds and (1) empty magazine found by DEA TFO Danner in a Jordan shoebox within a closet organizer in the bedroom closet.

Living Room
- A bag containing a white powdery substance and a bag containing (2) disc shaped rock-like substance were found by Special Agent Tenore in a green Gucci box which was hanging on the doorknob to a bi-fold door outside of the washer/dryer closet.

Kitchen

USAO_BEA_00000907

**Mansfield Police Department**                                     Page: 2
SUPPLEMENTAL NARRATIVE FOR DETECTIVE PATRICK J PENNIE
Ref: **21MAS-268-AR**

Entered: 08/02/2021 @ 1644        Entry ID: M10280
Modified: 08/03/2021 @ 0819       Modified ID: M2709

- A large zip-lock bag containing multiple smaller bags of a off-white rock-like substance was found underneath the sink contained in a black decorative box by Detective Kerr.
- (2) black scales found by Detective Lattanzio within the top kitchen drawer closest to the refrigerator.

4.     A search was conducted of Mr. Bean-Bousseau's silver Mercedes sedan at the Mansfield Police Department. The following property was seized from within the vehicle:

- A red iPhone that was found by Special Agent Tenore within the center console.

Respectfully Submitted,

Detective Patrick J. Pennie
Mansfield Police Department

USAO_BEA_00000908

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| vs. | Case No. 21-cr-10343-NMG |
| MALIK PARSONS, | |
| Defendant. | |

## GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT LAY OPINION TESTIMONY FROM LAW ENFORCEMENT WITNESSES

The United States respectfully moves *in limine* to admit lay opinion testimony from law enforcement witnesses the government intends to call in its case-in-chief under Federal Rule of Evidence 701. At trial, the government intends to introduce testimony from one or more law enforcement witnesses regarding such topics as drug packaging and distribution, drug quantities indicative of distribution or personal use, drug prices, and other common practices of drug traffickers. The agents or law enforcement officers who will offer this testimony—in addition to their personal involvement in the investigation of this case—are qualified law enforcement officers with many years of experience investigating narcotics offenses, as will be established during their testimony at trial.

The government submits that such testimony is properly characterized as admissible opinion testimony of a lay witness, pursuant to Federal Rule of Evidence 701. Under the rule, a non-expert witness may testify in the form of opinion if the testimony is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see also United States v. Albertelli,*

1

49

687 F.3d 439, 446-47 (1st Cir. 2012) (lay opinion must be based on the witness's perception, potentially helpful to the jury, and not based on expert knowledge). "[T]he touchstone for the admissibility under Rule 701 of such lay-opinion testimony is whether the testimony has the 'potential to help the jury.'" *United States v. Spencer*, 873 F.3d 1, 14 (1st Cir. 2017) (quoting *Albertelli*, 687 F.3d at 447). "Helpful testimony is typically based on the lay expertise a witness personally acquires through experience, often on the job." *Spencer*, 873 F3.d at 14 (cleaned up).

In drug trafficking cases like this one, under Rule 701, courts regularly admit lay opinion testimony from law enforcement officers to explain the drug trade and modus operandi of drug traffickers. For example:

- In *United States v. Rodriguez*, No. 22-1807, 2024 WL 3912259, at *9 (1st Cir. Aug. 23, 2024), the Court affirmed the district court's admission of a law enforcement officer's lay opinion testimony "when [the officer] can — based on his experience with drug investigations and his involvement in the current case — explain the drug trade and translate coded language."

- In *United States v. Dunston*, 851 F.3d 91, 96 (1st Cir. 2017), the Court stated that "[a]pplication of Rule 701 in the drug-trafficking context is not novel: we have long held that government witnesses with experience in drug investigations may explain the drug trade and translate coded language for factfinders through lay opinion testimony."

- In *Spencer*, 873 F.3d at 13–14 (1st Cir. 2017), the Court affirmed the admission of officers' testimony that defendants' patterns of conduct and speech were, on the basis of their experience, believed to be typical of those working together as a team in selling drugs.

2

- In *United States v. Moon*, 802 F.3d 135, 147–48 (1st Cir. 2015), the Court affirmed the admission of an officer's testimony, under Rule 701, that drugs appeared to be heroin and crack cocaine and that drug dealers often possess firearms.

- In *United States v. Reynoso*, 336 F.3d 46, 49 (1st Cir. 2003), the Court affirmed the admission of lay opinion testimony from a DEA agent, based on her experience, as to "the relative raw-weight distinctions in the drug quantities typically possessed by users as distinguished from dealers."

Because the anticipated testimony from competent law enforcement agents about drug packaging and distribution, drug quantities indicative of distribution or personal use, drug prices, and other common practices of drug traffickers meets the criteria of Rule 701, the Court should allow this testimony.

Respectfully submitted,

JOSHUA S. LEVY
United States Attorney

By:   /s/ Charles Dell'Anno
      Leah B. Foley
      Charles Dell'Anno
      Assistant U.S. Attorneys

Dated: December 23, 2024

3

51

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Charles Dell'Anno
Charles Dell'Anno
Assistant U.S. Attorney

Dated: December 23, 2024

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                     No. 21-CR-10343-NMG

MALIK PARSONS

## DEFENDANT'S REPONSE TO GOVERNMENT MOTION IN LIMINE TO ADMIT LAY OPINION TESIMONY

Now comes the defendant, Malik Parsons, and moves to limit or exclude law enforcement testimony that extends beyond the officers' perceptions in this case.

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. While a lay witness may testify to their unique conclusions related to the personal perceptions during the events of a case, lay opinion testimony should not transcend into ultimate conclusions, describe specialized training, or extend beyond conclusions drawn from personal perception. See *United States v. Garcia*, 413 F.3d 201, 212 (2d Cir. 2005). For example, when an officer has listened to many hours of wiretap calls, they may be uniquely capable of testifying about what coded language means between participants on the call based on the totality of their perceptions while listening to the calls. *See United States v. Dunston*, 851 F.3d 91, 96 (1st Cir. 2017) (holding that officer to give lay opinion testimony after listening nearly all of the 30,000 calls and texts collected during the wiretap).

The Second Circuit, in *United States v. Garcia*, described the outer bounds of lay opinion testimony. 413 F.3d 201, 211 (2d Cir. 2005). The Court recognized that lay opinion testimony

is necessary because witnesses "sometimes find it difficult to describe the appearance or relationship of persons, the atmosphere of a place, or the value of an object by reference only to objective facts..." *Id.* However, while an officer or other witness may describe the impression they received through their multiple perceptions during the case, when he or she presents an opinion about the person's "culpable role in a charged crime, he is not presenting the jury with the unique insights of an eyewitness's personal perceptions." *United States v. Garcia*, 413 F.3d 201, 212 (2d Cir. 2005) (citing *United States v. Grinage*, 390 F.3d at 750-51(2d Cit. 2004).

In this case, the officer should not be permitted to testify as a lay person regarding his specialized training and its impact on his observations or any topic that is not based upon his personal perceptions during the investigation of this case in context of his or her experience. *See* Fed. R. Evid. 701 (requiring that lay opinion <u>not</u> be based on not based on scientific, technical, or other specialized knowledge).

> To comply with the constraints of Rule 701, 'such interpretive testimony must be anchored in the witness's personal experience in the field . . . and his experience-based understanding of the meaning of the terms used.' Of course, such a law enforcement officer must limit his interpretation to language that is 'peculiar to the defendants' in the particular case and ground his interpretation 'largely on his immersion in the details of the relevant investigation.'

*United States v. Rodriguez*, 115 F.4th 24, 40-41 (1st Cir. 2024) (quoting *Dunston*, 851 F.3d at 97; *United States v. Albertelli*, 687 F.3d 439, 446-47 (1st Cir. 2012). Where the Government has chosen to present lay opinion evidence under Fed. R. Evid. 701, rather than expert opinion evidence with differing discovery requirements, its presentation must be bound to the limits of lay opinion testimony.

Respectfully submitted,

MALIK PARSONS
By His Attorney,

*/s/ Alyssa Hackett*
Alyssa Hackett, (she/her)

B.B.O.: 676880
Law Office of Alyssa T. Hackett
55 Union Street, 3rd Floor
Boston, MA 02108
AHackett@Hackett-Law.com
617-221-3407


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 30, 2024.


*/s/ Alyssa Hackett*
Alyssa Hackett

55

UNITED STATES DISTRICT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,      )
     Plaintiff,                )
     vs                        )   No. 1:21-CR-10343-NMG-2
MALIK D. PARSONS,              )
     Defendant.                )


BEFORE THE HONORABLE NATHANIEL M. GORTON
UNITED STATES DISTRICT JUDGE
JUDGE AND JURY TRIAL
DAY 1


John Joseph Moakley United States Courthouse
Courtroom No. 4
One Courthouse Way
Boston, Massachusetts  02210

MONDAY, JANUARY 21, 2025
9:50 A.M.


Catherine L. Zelinski, RPR, CRR, CRC
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3-205
Boston, Massachusetts  02210
Email: CAL.Zelinski.Steno@gmail.com


Mechanical Steno - Computer-Aided Transcript

or associate with a family member, but not be involved in everything that that family member does.

At the end of this trial, after you've heard everything about what law enforcement did and what they collected and what they didn't do, at that time I will ask you to find Mr. Parsons not guilty.

Thank you.

THE COURT: All right, then, the government will call its first witness.

Mr. Dell'Anno.

MR. DELL'ANNO: Yes, your Honor. The government calls Detective Anthony Lattanzio.

**ANTHONY LATTANZIO, Sworn.**

THE CLERK: And would you please state your name for the record spelling your last.

THE WITNESS: Anthony Lattanzio, L-A-T-T-A-N-Z-I-O.

**DIRECT EXAMINATION BY MR. DELL'ANNO:**

Q. And to start off, where do you currently work?

A. Mansfield Police Department.

Q. What is your title with the Mansfield Police Department?

A. Currently detective supervisor.

Q. How long have you been a detective supervisor?

A. For about a year and a half.

Q. What was your title prior to that?

A. That was it, just plain detective. And that's for over

what a stash house is?

A.    Yes.

Q.    What's a stash house?

A.    A stash house is a location that's primarily used to hide drugs and package drugs and has a primary distribution location.

Q.    All right.

Now focusing on this case specifically, are you familiar with the defendant in this case, Malik Parsons?

A.    I am.

Q.    How are you familiar with him?

A.    He was the subject of a narcotics investigation at one Mansfield Ave., apartment A-311.

Q.    And during the course of that investigation, that centered at One Mansfield, how often did you see Malik Parsons?

A.    Near daily basis.

Q.    How did you see him?

A.    Through surveillance.

Q.    What kinds of surveillance?

A.    Physical surveillance, also surveillance with the covert cameras.

Q.    Okay.

We'll talk more about covert cameras in a minute. But based on your observations from the investigation, do you see Malik Parsons in the courtroom?

# C E R T I F I C A T E

**UNITED STATES DISTRICT COURT )**

**DISTRICT OF MASSACHUSETTS      )**

I, Catherine L. Zelinski, certify that the foregoing is a true and accurate transcription of my stenographic notes from the record of proceedings taken Monday, January 21, 2025, in the above-entitled matter to the best of, my skill and ability.

/s/ Catherine L. Zelinski          11/17/2025

Catherine L. Zelinski, RPR, CRR, CRC      Date
Official Court Reporter

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,                )
                                         )
                    Plaintiff            )
                                         )   No. 1:21-cr-10343-NMG-2
vs.                                      )
                                         )
MALIK D. PARSONS,                        )
                                         )
                    Defendant.           )
                                         )
                                         )
                                         )


BEFORE THE HONORABLE NATHANIEL M. GORTON
UNITED STATES DISTRICT JUDGE
JURY TRIAL - DAY 2




John Joseph Moakley United States Courthouse
Courtroom No. 4
One Courthouse Way
Boston, Massachusetts 02210


January 22, 2025
9:38 a.m.



Kristin M. Kelley, RPR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3209
Boston, Massachusetts 02210
E-mail: kmob929@gmail.com

Mechanical Steno - Computer-Aided Transcript

time of his arrest?

MS. HACKETT: Objection.

THE COURT: The objection is sustained for foundation grounds.

MR. DELL'ANNO: I'll move on, your Honor.

Q. We've discussed some of the specific days during the course of this investigation, what you did during the investigation. Fair to say we haven't gone through -- we haven't looked at every piece of evidence you recovered in the investigation?

A. Correct.

Q. Based on what we saw during this trial and everything we've learned, how do you believe the apartment was being used?

A. I believe it was being used as a stash house to package and distribute illegal narcotics.

Q. Who was using that stash house?

MS. HACKETT: Objection.

THE COURT: Overruled.

A. Malik Bean and Malik Parsons.

MR. DELL'ANNO: One moment, please, your Honor.

I apologize, your Honor. My error. There's one more physical exhibit. May I approach?

THE COURT: Yes.

Q. I'm showing you what's been marked in this case as Exhibit 9. Do you recognize Exhibit 9?

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )

DISTRICT OF MASSACHUSETTS      )

I, Kristin M. Kelley, certify that the foregoing is a correct transcript from the record of proceedings taken January 22, 2025 in the above-entitled matter to the best of my skill and ability.

/s/ Kristin M. Kelley          November 15, 2025

Kristin M. Kelley, RPR, CRR          Date
Official Court Reporter



63

# U.S.S.G. §2D1.1

(b)   Specific Offense Characteristics

    (1)   If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

## U.S.S.G. §2D1.1 Commentary

11.   Application of Subsection (b)(1)- Definitions of "firearm" and "dangerous weapon" are found in the Commentary to §1B1.1 (Application Instructions). The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied of the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied of the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet. The enhancement also applies to offense that are referenced to §2D1.1; see §§2d1.2(a)(1) and (2), 2d1.5(a)(1), 2D1.6, 2D1.7(b)(1), 2D1.8, 2D1.11 (c) (1), and 2D1.12(c) (1).

## U.S.S.G. §4C1.1

(a) Adjustment.— If the defendant meets all of the following criteria:

    (1)   the defendant did not receive any criminal history points from Chapter Four, Part A;

    (2)   the defendant did not receive an adjustment under §3A1.4 (Terrorism);

    (3)   the defendant did not use violence or credible threats of violence in connection with the offense;

    (4)   the offense did not result in death or serious bodily injury;

    (5)   the instant offense of conviction is not a sex offense;

    (6)   the defendant did not personally cause substantial financial hardship;

(7)    the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8)    the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

(9)    the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense);

(10)   the defendant did not receive an adjustment under §3B1.1 (Aggravating Role); and

(11)   the defendant was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

decrease the offense level determined under Chapters Two and Three by 2 levels.